IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

RODNEY K. ADAMS *et al.*,
    Appellants,

v.                                                Civil No. 3:22cv237 (DJN)

LYNN L. TAVENNER, *as Chapter 7 Trustee*,
    Appellee.

## MEMORANDUM OPINION

This matter comes before the Court on its own initiative and on the Trustee's Motion (I) for Approval of Compromise and Settlement and (II) to Shorten Time, and Memorandum of Law, filed in the Bankruptcy Court ("Motion" (Case No. 19-34574, ECF No. 1900)). The Motion asked the Bankruptcy Court[1] to approve the Trustee's settlement between Gary LeClair ("LeClair") and the bankruptcy estate of LeClairRyan PLLC (the "Firm"), which provides for a process for vacatur of this Court's and the Bankruptcy Court's prior rulings regarding the Trustee's use of an equity shareholder list to determine the estate's tax obligations. The undersigned struck the provisions relating to vacatur, including factual stipulations that ran counter to the opinions at issue, during a Bankruptcy Court proceeding on July 27, 2023. An Order followed, wherein the Court withdrew the reference of this case to the Bankruptcy Court regarding LeClair's settlement and any other claims implicated in the Settlement Agreement and the Motion and struck the provisions as ruled upon from the bench. (Order (Withdrawing

---

[1] The Honorable Kevin R. Huennekens, United States Bankruptcy Judge, for the Eastern District of Virginia (Richmond Division).

Reference in Part, Striking Settlement Terms and Scheduling Hearing) ("August 15 Order") (ECF No. 30).) This Memorandum Opinion details the Court's rationale for that ruling.

## I. PROCEDURAL HISTORY AND BACKGROUND

This case comes before the Court with an unusual procedural history. It arises out of the bankruptcy case voluntarily commenced by LeClairRyan PLLC, initially under Chapter 11 of the Bankruptcy Code,[2] on September 3, 2019, in the United States Bankruptcy Court for the Eastern District of Virginia. On September 17, 2019, LeClairRyan filed its List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure ("ESH List," or the "List"). Immediately after her appointment, the Trustee began using the ESH List to file taxation documents for the estate. Due to the tax burdens imposed by membership on the List, LeClair and other List-members sought amendment of the List by the Trustee.

The Bankruptcy Court issued a Memorandum Opinion and Order on April 21, 2022, and a second Order on April 28, 2022. The court first denied LeClair's Motion to Amend Debtor's Equity Security Holders List Pursuant to Bankruptcy Rule 1009(a). (Case No. 19-34574, ECF Nos. 1301–02.) The second Order granted the Trustee's Motion for an Order Approving (I) The Trustee's Reliance on Debtor's List of Equity Security Holders and (II) Procedures for Obtaining Copies of Filed Tax Returns and Memorandum in Support Thereof. (Case No. 19-34574, ECF No. 1311.) LeClair and certain former attorneys of the Firm filed notices of appeal to this Court, challenging the two orders, which the Court consolidated into one action.[3]

---

[2] The estate converted the bankruptcy case to a Chapter 7 bankruptcy on October 4, 2019.

[3] The other appeals consolidated into this action are Case No. 3:22cv235 and Case No. 3:22cv238, pursuant to the Court's May 25, 2022 Order (ECF No. 7).

2

On January 4, 2023, the Court issued its Memorandum Opinion (Case No. 3:22cv237, ECF No. 22), finding that the Bankruptcy Court acted properly in granting the Trustee's Motion to Authorize and denying the Appellants' Motion to Amend and the Motions for Joinder. The Court affirmed the Bankruptcy Court's rulings on the motions, but reversed to the extent that the Bankruptcy Court improperly ruled that the Trustee may rely on future revisions of the ESH List and remanded to the Bankruptcy Court with instructions to strike the offending language from its Order, as well as to correct the date of the ESH List.

On February 2, 2023, LeClair filed a Notice of Appeal to the Fourth Circuit. (Case No. 3:22cv237, ECF No. 23.) On April 12, 2023, the Fourth Circuit scheduled a mediation conference in this case under Local Rule 33 and with the assistance of the Office of the Circuit Mediator. (Appeal Case No. 23-1133, ECF No. 19.) On June 14, 2023, after reaching a settlement-in-principle of the consolidated appeal, the parties filed a Joint Motion to Hold Appeal in Abeyance, pending the Bankruptcy Court's ruling on the Trustee's 9019 Motion for approval of the parties' settlement. (Appeal Case No. 23-1133, ECF No. 23.) On June 16, 2023, the Fourth Circuit granted the Motion for Abeyance pending the Bankruptcy Court's decision. (Appeal Case No. 23-1133, ECF No. 25.)

On June 13, 2023, the Trustee filed her Motion, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, in the Bankruptcy Court, seeking approval of the settlement between the Trustee and LeClair. (Case No. 19-34574, ECF No. 1900.) The Settlement Agreement (the "Agreement" (Case No. 19-34574, ECF No. 1902)) contained three main aspects: (1) that LeClair "shall have an allowed general unsecured claim in the amount of $1,612,197.25" and that the balance of his claim is disallowed; (2) that the parties shall file joint motions in the Bankruptcy Court and this Court requesting indicative rulings that both courts

3

vacate their opinions and orders regarding the Trustee's use of the ESH List, and, if so, then the parties would request a limited remand from the Fourth Circuit for the Bankruptcy Court and this Court to issue rulings on motions to vacate, before dismissing the appeal before the Circuit Court; and (3) that the Trustee shall sign a letter-exhibit with interpretations of LeClairRyan PLLC's corporate governance documents — some of which contradict the Court's prior rulings — which would be used by LeClair in connection with addressing his tax matters with the Internal Revenue Service, or other tax authorities. (Case No. 19-34574, ECF No. 1902.)

On June 27, 2023, the Bankruptcy Court conducted a hearing on the Motion. Before the hearing, Judge Huennekens identified problems with the portions of the settlement agreement regarding vacatur and notified the undersigned of the provisions. During the hearing, Judge Huennekens conveyed to the parties both his and the undersigned's concerns about the troublesome provisions and then scheduled an evidentiary hearing in July.

On July 27, 2023, the Bankruptcy Court held the evidentiary hearing on the Motion, with Judge Huennekens and the undersigned presiding jointly.[4] The undersigned ruled from the bench regarding the proposed settlement and the letter-exhibit containing factual stipulations.[5] The undersigned struck all provisions regarding requests or processes to vacate this Court's and the Bankruptcy Court's prior rulings and voided proposed factual stipulations that contradicted this Court's Opinion. The Bankruptcy Court then continued the hearing until August 29, 2023, for consideration of the Motion.

---

[4] Notably, LeClair's counsel failed to appear for the hearing.

[5] The factual stipulations are set forth in paragraph 12, page 15 of the parties' Motion. (ECF No. 1900 at 5-6).

4

On August 15, 2023, pursuant to 28 U.S.C. § 157(d), and due to the request to vacate and the contrary factual stipulations set forth in the Settlement Agreement and Motion that implicate this Court's prior rulings, the Court withdrew the reference of the case to the Bankruptcy Court regarding any claims of Gary LeClair and any other claims captured in the Settlement Agreement. (ECF No. 30.) That same day, the Court also entered an Order that (1) struck all provisions from the proposed Settlement Agreement relating to requests or processes to vacate the Court's or the Bankruptcy Court's prior rulings, (2) struck any factual stipulations made in the Motion and letter-exhibit to the Agreement that contradict the Court's rulings, and (3) scheduled a hearing regarding approval of the remaining aspects of the settlement for August 29, 2023. (ECF No. 30.) This Memorandum Opinion explains the Court's reasoning for the Order.

## II.     ANALYSIS

As discussed above, on June 13, 2023, the Trustee filed her Motion in the Bankruptcy Court seeking approval of the settlement between the Trustee, on behalf of the estate, and LeClair. (Case No. 19-34574, ECF No. 1900.) As relevant here, the Agreement created a process for the parties to jointly seek vacatur of this Court's and the Bankruptcy Court's prior rulings on the ESH List. (Case No. 19-34574, ECF No. 1902.) The Agreement provided that, after settlement approval by the Bankruptcy Court, the parties would jointly move the Court under Federal Rule of Civil Procedure 62.1 for an indicative ruling that the Court vacate its opinion under Rule 60(b)(6); if granted, following a partial remand process from the Fourth Circuit, the parties would further move the Court, pursuant to Rule 60(b)(6), to vacate its opinion and order at issue. Because court opinions should only be vacated in extraordinary situations — and when the twin considerations of lack of fault and public interest together also counsel in

support of vacatur — the Court struck from the Settlement Agreement any provisions relating to vacatur, as well as the factual stipulations that contradicted the previous ruling by the Court.

As the parties' anticipated motions contemplated rulings from the Court regarding vacatur under Rule 60(b)(6), the Court applies that standard in its consideration of the proposed settlement agreement. The Court finds that LeClair and the Trustee have failed to demonstrate the extraordinary circumstances necessary for a court to vacate a prior ruling — so demonstrably so that the suggestion that the Court, and the Bankruptcy Court, vacate their prior rulings impugns bedrock judicial principles regarding the importance of precedent and the independence of the judiciary.

A.  **Relevant Legal Standard**

Federal Rule of Civil Procedure 60(b) delineates the circumstances in which a district court may relieve a party of a final judgment, order or proceedings. Subsections (b)(1)–(5) provide five narrow reasons for which a court may grant such relief, while subsection (b)(6) lends the Court discretion to grant relief for "any other reason that justifies relief." Fed. R. Civ. P. 60(b). Courts within the Fourth Circuit have interpreted Rule 60(b)(6) extremely narrowly, granting relief only under the most "extraordinary circumstances" and applying a weighty presumption against vacatur, especially "when a case has been fully briefed, argued and decided by a written opinion." *Spencer v. Am. Int'l Grp., Inc.*, 2009 WL 1034255, at *1 (E.D. Va. April 16, 2009) (citing *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118, 121 (4th Cir. 2000)); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988) ("Extraordinary circumstances are required to bring the motion within the 'other reason' language.") (cleaned up). As vacatur constitutes equitable relief, *Valero*, 211 F.3d at 118, a district court possesses

discretion as to whether to grant or deny a Rule 60(b) motion. *Neumann v. Prudential Ins. Co. of Am.*, 398 F. Supp. 2d 489, 492 (E.D. Va. 2005).

Importantly, both the Supreme Court and the Fourth Circuit have made clear that vacatur of judicial opinions should only occur in extraordinary situations and only when public policy concerns warrant such extraordinary relief. In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* the Supreme Court analyzed what constitutes extraordinary circumstances that may warrant an appellate court's vacatur of a lower court's judgment, after the parties reached a settlement that provided for the vacatur of a judgment. 513 U.S. 18 (1994). In rejecting a mootness challenge to the review of the settlement, the Court explained:

> As always when federal courts contemplate equitable relief, our holding must also take account of the public interest. Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur. Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments. To allow a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would — quite apart from any considerations of fairness to the parties — disturb the orderly operation of the federal judicial system.

*Id.* at 26–27 (internal quotation marks and citations omitted). And in words that resonate here, the Court explicitly stated that "exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur . . . ." *Id.* at 29; *see also Neumann*, 398 F. Supp. 2d at 493 (quoting *Bancorp* and explaining why settlement alone fails to constitute an extraordinary circumstance warranting vacatur).

Six years later, the Fourth Circuit applied *Bancorp* to a district court's analysis of vacatur under Rule 60(b)(6). *Valero*, 211 F.3d at 121. In *Valero*, the court held that "*Bancorp*'s considerations of relative fault and public interest must also be largely determinative of a district

7

court's decision" on a motion for vacatur. 211 F.3d at 118 (finding *Bancorp*'s factors highly relevant despite the different statutory sources providing the district and appellate courts' vacatur powers). Therefore, the general (and weighty) presumption against vacatur may only be overcome after the district court examines the relative fault of the parties and then determines that "exceptional circumstances exist" such that vacatur is in the public interest. *Valero*, 211 F.3d at 118; *see also United States v. Welsh*, 879 F.3d 530, 536 (4th Cir. 2018) (stating that district courts, under Rule 60(b), must consider "the sanctity of final judgments, expressed in the doctrine of res judicata" and the orderliness of the judiciary under the "public interest" factor) (quoting *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979)).

### B. No Extraordinary Circumstances Exist Warranting Vacatur

This case falls squarely within the realm of *Bancorp* and its progeny: the parties move for approval of a settlement conditioned on vacatur of the Court's and the Bankruptcy Court's prior rulings. It remains well-settled that "mootness by reason of settlement does not justify vacatur of a judgment under review" absent "*exceptional circumstances* [which] do not include the mere fact that the settlement agreement provides for vacatur." *Bancorp*, 513 U.S. at 29; *see also Neumann*, 398 F. Supp. 2d 489, 491 (E.D. Va. 2005) (denying a Rule 60(b)(6) motion on these grounds); *Meineke Car Care Ctrs., Inc. v. RLB Holdings, LLC*, 2010 WL 137297, at *1 (W.D.N.C. Jan. 7, 2010) (finding that no exceptional circumstances existed worthy of vacatur, and that the case was not "unique because the parties have reached a settlement agreement while the case is on appeal"). In other words, vacatur simply being part of a settlement agreement falls far short of the necessary demonstration of exceptional circumstances which must occur before a court grants vacatur. *Bancorp*, 513 U.S. at 29.

In their motion for settlement approval, the parties make no mention — not a single word — about these bedrock principles nor even attempt to offer an exceptional circumstance furthering public interest that would justify the extraordinary relief that they seek, stating only to prevail that they "will have to demonstrate exceptional circumstances (among other things)." (Motion at 10.) Neither do the parties counter the fact that "the relative fault and the public interest" considerations point against vacatur. *Microstrategy Inc. v. Apttus Corp.*, 2015 WL 12839248, at *3 (E.D. Va. Nov. 4, 2015) (noting direction by the Fourth Circuit to evaluate these factors when considering a motion to vacate under Rule 60(b)) (citing *Valero*, 211 F.3d at 118). Instead, the parties merely state that the settlement is "fair and equitable," and that it ends the litigation. (Motion at 7.) But expediency fails to constitute an extraordinary basis. Indeed, as the Supreme Court made clear, and other courts have reiterated, "[t]he mere fact that a settlement is conditioned on vacatur falls 'far short of overcoming the general presumption against vacatur.'" *Tustin v. Motorists Mut. Ins. Co.*, 2009 WL 3785757, at *5 (N.D.W. Va. Nov. 10, 2009) (quoting *Neumann*, 398 F. Supp. 2d at 492).

Moreover, no alternate exceptional circumstance nor public interest in vacatur could ever be found here, as this agreement simply endeavors to relieve LeClair of his tax responsibilities that flowed from the bungled dissolution of his law firm. While the meteoric rise and fall of LeClairRyan PLLC may have been extraordinary, LeClair's personal avarice does not translate into a circumstance worthy of vacating this Court's opinion. LeClair merely pursues avoidance of the precedential and preclusive effects that this Court's and the Bankruptcy Court's decisions may have on his personal taxes; yet greed and avoidance of personal tax consequences constitute the antithesis of the extraordinary circumstances contemplated by the Supreme Court in *Bancorp.* 513 U.S. at 29. Indeed, were the Court to approve such an unseemly agreement, it

9

would become a full partner in LeClair's tax avoidance efforts. The Court declines LeClair's invitation to do so. *See Spencer*, 2009 WL 1034255, at *2 ("Granting [the parties'] motion for vacatur to facilitate the terms of [the] settlement agreement would make the Court appear to be 'little more than an elaborate settlement mechanism.'") (citation omitted).

If LeClair is unhappy with this Court's decision, he has a remedy: litigate his appeal. As eloquently stated by Judge Ellis, "While [the parties'] desire to eliminate any precedential or persuasive effect the Opinion may have is understandable, the appropriate means for doing so is the appeal. If the Opinion is wrong, vacatur will follow; if correct, it should stand." *Nuemann*, 398 F. Supp. 2d at 493 (citations omitted). LeClair sought, via vacating this Court's rulings, to absolve himself of LeClairRyan's mistakes. However, the Court has no responsibility to right the wrongs of the Firm's botched dissolution nor to halt the tax consequences that apparently resulted.

As to the Trustee, it appears that she sought vacatur purely to grease the wheels of settlement, albeit at the suggestion of the Circuit Mediator.[6] The Trustee — who plays a critical oversight role in bankruptcy cases — should have recognized the impropriety of this flawed agreement, as Judge Huennekens immediately did. At a minimum, the Trustee should have engaged in research on the correctness of the agreement before moving forward, particularly when this area of law has been well established by both the Supreme Court and Fourth Circuit. And simply reaching an agreement to end the litigation speaks to an "ends justifies the means" approach that ignores constitutional guardrails and which has become all too common in the Bankruptcy Court. Settlement does not constitute the dominant goal of the Court in the post-

---

[6] As with the Trustee, the Court would expect that a mediator from the Office of the Circuit Mediator would be familiar with the case law on this issue before proceeding down this ill-conceived path.

10

judgment phase of litigation "because federal courts are institutions whose power and authority derive not from mere private agreement, but from public law . . . [they] exist not just to bring peace between warring parties, but more importantly to give express and force to the rules and principles embodied in . . . governing law." *Nuemann*, 398 F. Supp. 2d at 493. While the Court understands that the Trustee has been presented with an extremely difficult job in the dissolution of this embattled law firm, she cannot ignore her unique position or its attendant responsibilities.

### III. CONCLUSION

"In [the Court's] view, the case at hand presents no 'exceptional circumstances' and the parties have suggested none." *Pressley Ridge*, 134 F.3d at 1222. Accordingly, as no extraordinary circumstances exist such that the public interest would warrant vacating the Court's or Bankruptcy Court's opinions or orders, the Court has stricken all aspects of the Settlement Agreement relating to vacatur, including all factual stipulations that contradict this Court's and the Bankruptcy Court's previous rulings. (ECF No. 30.)

The Clerk is directed to file a copy of this Memorandum Opinion electronically and notify all counsel of record, as well as provide a copy to Judge Huennekens' chambers.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: August 22, 2023

11