IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**RODNEY K. ADAMS, et al.,**
    Appellants,

v.                                  Civil No. 3:22cv237 (DJN)

**LYNN L. TAVENNER, as Chapter 7 Trustee,**
    Appellee.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:                                        Case No. 19-34574-KRH

    LeClairRyan, PLLC,[1]

    Debtor                                    Chapter 7

## TRUSTEE'S PLEADINGS PURSUANT TO
## <u>MEMORANDUM ORDER ENTERED AUGUST 16, 2023</u>

Coms now Lynn L. Tavenner, Trustee, and not individually but solely in her capacity as the Chapter 7 trustee (in such capacity, the "**Chapter 7 Trustee**" and/or the "**Trustee**") of the bankruptcy estate (the "**Estate**") of LeClairRyan PLLC ("**LeClairRyan**" and/or the "**Debtor**"), in the above-referenced Chapter 7 case (the "**Case**"), by counsel, and reports to this Court as

---

[1] The principal address of the Debtor as of the petition date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Telephone:  (804) 783-8300
Facsimile:   (804) 783-0178

*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

directed in this Court's Memorandum Order [Docket No. 30] (the "**August Memorandum Order**") entered on August 16, 2023. Specifically, the Court directed:

> No later than Thursday, August 24, 2023, the parties shall file pleadings regarding whether they intend to move forward with the proposed settlement absent the stricken provisions. In the pleadings, the parties shall also address the implications of their decisions on whether the parties need to notify the Fourth Circuit to lift, or keep, the stay on Plaintiffs pending appeal. Additionally, the pleadings should also address the implications of withdrawing the reference on the pending remand to the Bankruptcy Court to amend its earlier order regarding the ESH List.

On August 22, 2023, this Court issued its Memorandum Opinion [Docket No. 31] (the "**August Memorandum Order**") wherein it detailed the Court's rationale for the rulings contained in the August Memorandum Order. In response to the Court's directive in the August Memorandum Order, the Trustee respectfully responds as follows:

### Intention on Whether Moving Forward with Revised Settlement

The Trustee believes it could be beneficial to the interest of the Estate to resolve the pending proof of claim filed by Mr. LeClair by way of seeking approval of the settlement agreement as modified by this Court. Given the same, immediately after the hearing on July 27, 2023 (the "**July 27 Hearing**") before this Honorable Court and the Honorable Kevin R. Huennekens of the United States Bankruptcy Court for the Eastern District of Virginia (the "**Bankruptcy Court**"), the Trustee ordered the transcript of said hearing. Upon receiving the transcript on July 31, 2023, the Trustee read the same, contacted the Office of the United States Trustee ("**UST**") about matters involving the same, and directed counsel to determine if the proposed settlement agreement (the "**Initial Settlement Agreement**") attached to her *Motion to Approve Compromise under FRBP 9019* [ECF No. 1900] (the "**9019 Motion**") could be revised

is such a fashion manner that both incorporated your Honor's directives at the July 27 Hearing and would be acceptable to Mr. LeClair.  And, the Trustee was and remains pleased that the parties have an acceptable settlement agreement,  that both parties believe is consistent your Honor's directive.

However, always striving to be forthright and candid with this Court, as well as all courts that the Trustee and/or her counsel have ever appeared in, the Trustee must disclose that she has not made a final decision. After having recently received and read the August Memorandum Opinion and having a better understanding of the Court's decision,  as required by what this Court in that August Memorandum Opinion referred to as "her unique position" and "attendant responsibilities," the Trustee is weighing the interests of the Estate in taking other action, including but not limited to an appeal and/or  motion to reconsider.  As stated by this Honorable Court at the  July 27  Hearing, "If they don't my opinions, they appeal to the Fourth Circuit . . ." p. 4. With all due respect to this Honorable Court, the Trustee does not like the Memorandum Opinion  and maintains that the ruling is neither supported by actual facts nor the correct legal analysis. But given her unique position and attendant responsibilities, the Trustee's analysis must also involve an informed decision in the exercise of her business judgement as to what is in the best interest of the Estate. In hopes that this Court will better understand the Trustee's position, the Trustee provides additional background.

The Trustee and the undersigned have been members of the bar of this Court for more than thirty years each and have conducted their entire legal careers from offices here in Richmond, serving as judicial law clerks and the undersigned also serving on staff counsel to the Fourth Circuit Court of Appeals,  and then both accepting every opportunity to serve as stewards of an honest and much needed bankruptcy system not only as attorneys but also as trustee

fiduciaries, one as a Chapter 7 Trustee and the other as a Subchapter V Trustee. We have also worked within various bars and the community to promote and protect the judicial process. In each and every role, we have attempted to proceed with the utmost integrity as well as with exceptional legal competence. And we had thought we had always met that high benchmark we set especially given that we have, over the years, been asked to assist court personnel and/or their family members from within the judicial system such as the Fourth Circuit Court of Appeals and the Virginia Supreme Court, and even from within this very building your Honor referenced at the July 27 Hearing. We are extremely proud of our reputation .Needless to say, we were, and are, enormously troubled by the remarks directly pointed at us during the July 27 Hearing and were especially distraught to think that any judge would consider any action we have ever taken to be offensive or unseemly.

Expecting that no Court would ever be thrilled by a vacatur request, the Trustee took great pains to ensure that nothing in the proposed settlement was contrary to the prior rulings of this Court. In fact, as indicated by counsel in Court, she believes the opinions as written are accurate. But in the exercise of her fiduciary duty to the creditors of this Estate, she also believes that given that there is little precedential value in the opinions given the unique contract at issue that is the primary subject of all opinions, (there is no other contract like the one at issue!), this is the extraordinary case in which vacatur would be justified. To be sure, she and her counsel appreciate all of the time and effort expended by the judiciary and do not intend to disrespect the sanctity of the judicial process in any way. Indeed, they were shocked and devastated to hear that the Court believes they have in some way denigrated the sanctity of the Court that they have worked so hard to defend and protect over our years in practice. And unlike ill-suited instances where vacatur is sought at the end of hard- fought litigation between two adversaries who just

want the ruling gone and do not avail themselves of their appellate rights, in this instance, from the Trustee's perspective vacatur is very different because it would pave the way for the claims resolution process and the an efficient windup of the administration of a bankruptcy estate wherein the Trustee is the fiduciary for hundreds of constituents who at no fault of their own are waiting patiently for a hopeful percentage recovery of the amounts they are due from the law firm.

The 9019 Motion was originally scheduled for hearing at the June 27, 2023 omnibus hearing for the Case. Because Rule 2002 of the Federal Rules of Bankruptcy Procedure provide for such hearings to ordinarily be scheduled on 21- days' notice to parties in interest, the 9019 Motion also contained a request for the Court to shorten such notice period give that the 9019 Motion had been filed on June 13, 2023 (as soon as the practicable after the parties reached the settlement during the mediation). When the matter was called, Judge Huennekens first expressed concern with respect to the notice and whether or not relevant parties had received the same. While counsel assured the Court that all parties had received notice, Judge Huennekens expressed his concern that all equity security holders have ample time to consider the impact of the 9019 Motion. Even though counsel explained that there would be no negative impact, Judge Huennekens remained concerned.

Specifically Judge Huennekens said:

> THE COURT: I am very concerned about what is going on here and what is being requested. I'm unclear what I'm approving, whether it's a claim or some involvement with the Internal Revenue Service with regard to tax liability, which I don't believe is the case. In any event, I am very, very bothered about the shortening of time and whether the equity security holders understand that their ox may be being gored, and I don't know whether it is or not. That's a lot of what's going on here. So I'm going to deny the motion, Ms. Beran, to shorten time. I'm not going to address today the settlement agreement. I'm going to set that over to the July omnibus hearing date.

Transcript of June 27, 2023 Hearing, page 32 Line 21-25 and page 33 Line 1-6.

While Judge Huennekens' focus during the hearing was on the propriety of the notice and the import of the agreement on other equity security holders, he also took the opportunity during the hearing to advise that he had spoken with Judge Novak about the 9019 Motion and that Judge Novak was focused on the settlement aspect whereby the parties would seek an indicative ruling from him with respect to vacatur of his prior rulings. THE COURT: All right. So Judge Novak has spoken to me about this matter, so I should put that on the record. First of all, he has no problem or instant agreement that the 9019 matter is properly before this court as part of the overall bankruptcy case and not part of the contested matter, which went up and that he considered. However, he has let me know that there is absolutely no way he's going to amend or modify his opinion or vacate his opinion or do anything in that regard. I don't know how that affects anything that the trustee might want to do, but I thought that you should be aware of that.

Transcript of June 27, 2023 Hearing Page 21, Lines 14 – 24.

Counsel explained that vacatur was not a condition of the settlement and that the settlement merely set up a process to make such a request. Judge Huennekens remained focused on the notice and opportunity to be heard issues.

In fact, at the conclusion of the hearing Judge Huennekens reiterated that he just wanted to make sure potentially impacted parties had the ability to weigh in and once assured of the same was inclined to approve the 9019 Motion

THE COURT: For purposes of today, I'm denying the motion to shorten time. That's all I'm doing. It will be set on twenty-one days' notice on the next omnibus hearing date when all parties can be present and weigh in. And if you get the consent of all of the equity security holders, Ms. Beran, it's extremely likely I'm going to approve this. But I just want to make sure that everyone understands what's going on and everybody's on board.

Transcript of June 27, 2023 Hearing Page 33 Lines 23 -25 and Page 34 Lines 1 -5.

The Trustee and other equity security holders heard Judge Huennekens loud and clear. The Trustee as evidenced by the additional notice filed served the equity security holders again. And at the evidentiary hearing scheduled in July, twenty -six equity security holders appeared

through counsel and one appeared in person. None objected and two responses were filed in support. Sadly, none were provided to make statements to the Court.

Thereafter, the Bankruptcy Court issued *its Order (I) Denying Request to Shorten Time and (II) Setting Evidentiary Hearing* (the "Scheduling Order") [ECF No. 1920] and the Trustee abided by every aspect of the same. For example, the Trustee timely filed a Witness and Related Declaration [ECF No.    ], where she stated, through counsel,

> It is anticipated that Ms. Tavenner's direct testimony will be as reflected on (a) the below included *Declaration of Lynn L. Tavenner, Trustee* and (b) paragraphs 11 through 18 of the declaration found in *List of Witnesses and Related Declaration* [ECF No. 1906]. In addition to these declarations, at the hearing held pursuant to the Scheduling Order, Ms. Tavenner's testimony will be proffered consistent with the same. Rebuttal testimony will be as needed to clarify items raised during any cross examination.

Immediately thereafter, the document contained a Declaration of Lynn L. Tavenner, Trustee (the "**Tavenner July Declaration**").

As this Honorable Court so aptly and excellently stated in its January 2023 Opinion "[C]ourts cannot issue opinions that lack a concrete question presented or opine on future issues not before the court. Courts 'must wait until the case has 'taken on fixed and final shape so that [a court] can see what legal issues [it] is deciding, [and] what effect its decision will have on the adversaries.'" *Trustgard Ins. Co. v. Collins*, 942 F. 3d 195, 200 (4th Cir. 2019)(quoting *Pub. Serv. Comm'n of Utah v Wycoff Co.*, 344 U.S. 237, 244 (1952*)) see also Gilles v Torgersen*, 71 F.3d 497, 500 (4th Cir. 1985) ("Courts, however, must not deal in abstractions, for court can only adjudicate actual cases, involving issues that are precisely framed by their connection to specific litigants in a concrete context.)" The Trustee respectfully submits that this Court's recent rulings run afoul of the excellent January 2023 Opinion and are impermissible advisory opinions in that

there neither a Rule 60 Motion nor a Motion for Indicative Ruling was pending. And the analysis performed by the Court focused on the same.

Out of the utmost respect for this Court and not wanting there to be any type of appearance that the Trustee was arguing her basis for vacatur to the Bankruptcy Court before addressing the same with this Court, these motions and the basis for the same were intentionally not presented. Instead, the Trustee stated that the same would be filed with this Court should the settlement be approved.

Had the Court conducted the correct analysis for the motion that was "precisely framed by their connection to specific litigants in a concrete context" and not opined on a future issue that was stated would be before the Court, it had sufficient facts and legal authority to approve the same. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). [H]owever, it is essential that every important determination in reorganization proceedings receive the 'informed, independent judgment' of the bankruptcy court." Id. (quoting Nat'l Sur. Co. v. Coriell, 289 U.S. 426,436 (1933)). To effectuate such a policy, Bankruptcy Rule 9019 allows a trustee to settle a matter with the approval of the Court. Fed. R. Bankr. P. 9019. "The decision of the bankruptcy judge as to the approval of a proffered compromise rests within the judge's own sound discretion." *Shaia v. Three Rivers Wood, Inc. (In re Three Rivers Wood, Inc.)*, Case No. 98-68685-DOT, Adv. Pro. No. 99-3020-DOT, 2001 WL 720620, at *4, 2001 Bankr. LEXIS 737, at

*12-13 (Bania·. E.D. Va. Mar. 20, 2001) (citing In re Sapphire S.S. Lines, Inc., 339 F. Supp. 119 (S.D.N . 1972); In re Ira Haupt & Co., 252 F. Supp. 339 (S.D.N.Y. 1966)).

In determining whether a proposed compromise and settlement is fair and equitable, courts in this District consider the following factors: (a) "the probability of success in litigation; (b)"potential collection struggles;" (c) "the complexity, time and expense involved in litigating the matter;" and (d) "the interests of the creditors." *Loudoun Heights*, 2014 WL 2928110, at *9 (citations omitted); *Three Rivers Wood*, 2001 WL 720620, at *6 (same). Additionally, the Court must determine whether the proposed settlement is in the best interests of the Estate. *Three Rivers Wood*, 2001 WL 720620, at *6 ("a compromise or settlement will most likely gain approval if is it both 'fair and equitable,' as well as representative of the best interests of the estate as a whole") (citations omitted); Frye, 216 B.R. at 174 ("In order to approve a compromise, this court must look at various factors and determine whether the compromise is in the best interest of the estate and whether it is fair and equitable."); In re Energy Coop. Inc., 886 F.2d 921, 927 (7th Cir. 1989) ("The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate.").

The factors that courts consider to determine the best interests are similar to the factors to determine whether the settlement is fair and equitable. *See Parker v. Bullis (In re Bullis),* 515 B.R. 284, 288 (Bankr. E.D. Va. 2014) ("The best interests of the estate are met by considering the same factors a court considers in reviewing any proposed settlement: (1) the probability of success on the merits in the litigation; (2) possible difficulties of collecting any judgment which might be obtained; (3) the complexity, expense, and likely duration of any ensuing litigation; and (4) the interests of the creditors, giving proper deference to their reasonable views.") (Internal citations omitted).

When reviewing a proposed settlement, the Court should consider the Trustee's business judgment and the opinions of the other parties to such settlement, and the Court should not substitute its judgment for that of the Trustee. Indeed, the Court must determine "whether the settlement falls below the lowest point in the range of reasonableness." *Three Rivers Wood*, 2001 WL 720620, at *6 (quoting Austin, 186 B.R. at 400). Where a proposed settlement is not below the lowest point of what is fair and reasonable and represents the best interests of the estate as a whole, the court should approve it pursuant to Bankruptcy Rule 9019. *Three Rivers Wood*, 2001 WL 720620, at *6.

In this instance the Trustee presented evidence through her Declarations to show that in the exercise of her business judgment, the Settlement was fair and equitable, in the best interest of the Debtor's Estate and certainly not below the lowest range of reasonableness. No evidence was presented in opposition. In fact, there were no objectors to the settlement and a majority of the equity security holders through counsel filed pleadings in support. (Even one equity security holder was in attendance at the July hearing in support of the Settlement.) The Settlement, if effectuated as originally contemplated, would have resolved the claim of Mr. LeClair, which if tried to conclusion would have taken many months and involved claims from the same contract that currently are on appeal to the Fourth Circuit. It also paved the way for the administration of remaining claims. Importantly, it likely would have resulted in the Case being fully administered in 2024 which is in the best interest of creditors because allowed claims would be paid sooner and likely in an amount greater than if the Settlement was not approved and effectuated. And importantly, the Settlement did not include any element that was a contradiction to any prior orders or opinions from the District or Bankruptcy Court.

Indeed, approval of the settlement would result in greater and more expedient distributions to creditors, which factor alone weighs heavily in favor of approving the Settlement Agreement. See In re Three Rivers Woods, Inc., 2001 WL 720620, at *7, 2001 Bankr. LEXIS 737, at *20 ("The trustee owes a primary duty to the unsecured creditors, who favor and will benefit from the proposed settlement."). There can be no dispute that the compromise was fair and equitable to all constituents and in the best interests of the Estate and if the Court had used the appropriate standard to consider the Rule 9019 settlement, it should have been approved.

In addition to the legal issues with the August Memorandum Opinion, it contains inaccurate statements of fact. And had the Court conducted an actual hearing on the 9019 Motion and allowed any type of evidence to address a stated concern, it would have known that the factual statement that the Trustee did no research on the correctness of the agreement before moving forward is incorrect. To the contrary, the Trustee and counsel did extensive research. And both the Trustee and counsel as each stood before this Court knew that the concept of vacatur in the context of settlement is an acceptable practice in the Alexandria Division (and in other courts around the country) and we knew that day the relevant standard that was a few weeks later articulated by this Court August Memorandum. Standing before this Court on July 27, 2023, we, however, had no idea why it was perceived as unseemly and inappropriate in the Richmond Division as indicated by this Honorable Court such that our very livelihood was threatened. To reassure the UST that neither she nor any counsel she retained would ever intentionally do anything unseemly and/or inappropriate, the Trustee, as indicated above, after receiving a copy of the July 27, 2023, contacted the UST. That correspondence is attached hereto as Exhibit A and B. As is evident from that correspondence, the Trustee was keenly aware of the

relevant case law around the country and was very confused why this Court said "I never want to see that again in our building. We don't do that here." p. 5 and "And we do not vacate – that cannot be a condition in a settlement agreement is what I'm tell you, in this building. Vacating opinions is not an option. . . . . They want to do that somewhere else, that's up to them. We don't do that here" p. 9.   As the Trustee, through counsel, reported on August 1, 2023 to the UST:

> Judge Ellis' opinion is attached.
>
> We learned about the concept of vacatur in the context of settlement during the Fourth Circuit mediation, and we were specifically pointed to the Fourth Circuit docket for a case that had used the process to settle a matter that had been pending at the Fourth Circuit.  It however was not an EDVA case.  And, while the 4th Circuit has held that vacatur may be done through Rule 60 b (*see Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121 (4th Cir. 2000)), that case did not address vacatur in the context of settlements.  So we researched further and found that the case that is most cited for the vacatur in the context of settlement and the relevant legal standard is *Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co.*, 828 F.3d 1331 (11th Cir. 2016) which followed and further explained the test that had been applied in much earlier circuit court cases of *Motta v. Dist. Dir. Of INS.*, 61 F.3d 117 (1st Cir. 1995) and  *Major League Baseball Properties, Inc. v Pacific Trading Cards, Inc.* 150 F.3d 149 (2nd Cir. 1998).  That delineated standard is exceptional circumstances along with weighing the benefits of settlement against the harm to the public.  When addressing vacatur in the context of settlement, courts around the country consistently have (1) cited these cases and (2) utilized the articulated test.   As you will see in the attached opinion, Judge Ellis adopted and applied the test as articulated in *Hartford Cas. Ins, Motta* and *Major League Baseball*.
>
> And as you may recall from the Trustee's original 9019 motion, we pointed to this standard right up front when we stated:
>
> 24.      While not currently before this Court for approval, the Trustee acknowledges that a critical aspect of the Settlement as it relates to the Appeal is the vacatur of certain court orders/opinions by this Court and the District Court. And, the Trustee appreciates that to prevail, the parties will have to demonstrate exceptional circumstances (among other things). The Trustee maintains that the same exists given the unique circumstances in this bankruptcy case. As such, she is prepared to move forward to seek the same from this Court and the District Court if the Settlement is approved.
>
> I still am at a loss to understand how it was interpreted that the lawyers agreed to vacate District Court and Bankruptcy Court opinions. While I had thought that issue was succinctly addressed in the cited paragraph from the 9019 motion, I take full responsibility for not making it clearer in the motion and in my assistance to Lynn in the context of her declarations.

> And even though seeking vacatur in the context of settlement is an acceptable practice in the Alexandria Division (and in other courts around the country), we certainly understand now that it is perceived as unseemly and inappropriate in the Richmond Division.
>
> Lynn and I are happy to answer any additional questions you may have.
>
> Take care,
>
> Paula

As such, the Trustee respectfully submits that there was no evidence to support any factual finding that the Trustee engaged in no research on the correctness of the agreement before moving forward. The same is factually incorrect.

Furthermore, the Trustee respectfully submits that she has never and would never stipulate to a fact that is contrary to this Court's rulings. In her July Declaration at Paragraph 15, the Trustee further explained:

> As part of the proposed settlement, I will acknowledge in a letter certain asserted facts (as detailed in paragraph 15 of my June Declaration) that shall be used by Mr. LeClair only in connection with addressing his personal tax obligations with the Internal Revenue Service, state taxing authorities, and/or applicable tax or other court. There is a possibility that this Chapter 7 Case will be fully administered and closed before Mr. LeClair's personal tax obligations are addressed. Under that scenario, corporate documents will have been destroyed and there will be no individual available to speak on behalf of the LeClairRyan Estate. The proposed side letter contains a recitation of undisputed facts that are relevant to Mr. LeClair and his personal tax obligations; put another way, the side letter contains undisputed facts upon which Mr. LeClair and I agree may be relevant to Mr. LeClair and his personal tax obligations. Just because other assertions are omitted from that letter does not mean that I have learned something that suggests I should change how I proceed. Any said omission merely means it is something that Mr. LeClair and I are unable to reach agreement on and/or he believes is not relevant to his personal tax obligations. I, as the Chapter 7 Trustee, remain committed and able, if necessary, to protect the Estate's interests with all positions and supporting facts I have presented to this Court and the District Court.

And, the August Memorandum states that the Trustee's stipulations contradict the Court's prior rulings. The Trustee respectfully disagrees. The Stipulations are as follows:

| Stipulation | Source of Stipulation | Notes |
|---|---|---|
| Upon my appointment, I was immediately faced with an audit by the Internal Revenue Service, additional tax filings on short turnaround, and questions about the Estate's issuance of Schedule K-1s. In addressing these matters, I relied in good faith on the LeClairRyan, PLLC's books and records. | Trustee's personal knowledge | |
| I am aware that the Dissolution Committee prepared a List of Equity Security Holders (the "ESH List") as of July 29, 2019, and that said ESH List included Mr. LeClair. | ECF 76 on File with this Court states:<br><br>The Debtor submits that the individuals identified below were the members of LeClairRyan PLLC as of July 29, 2019, which is the date the members resolved to dissolve the firm:<br><br>Trustee also saw correspondence in the Debtor's books and records.<br><br>ECF 1 at page 9-11 says Dissolution Committee is authorized and empowered to verify all necessary documents for Bankruptcy Filing | January Memorandum Opinion says:<br><br>The ESH List should be dated as of the bankruptcy Petition Date, September 3, 2019 but this does not change Appellants' status.<br><br>Trustee completely agrees with and is prepared to support Court's finding that results as a date as of matter of law.<br><br>Court's finding does not change the fact that the Dissolution Committee prepared it as of July 29, 2019 |
| Based on an analysis provided by Mr. LeClair, I understand that Mr. LeClair would no longer be a member | Trustee's understanding. | Says – Mr. LeClair's analysis<br>Says – Would<br><br>Does not say Trustee agrees |

| | | |
|---|---|---|
| of LeClairRyan, PLLC as of July 31, 2019. | | Does not contradict any finding of either the District Court or the Bankruptcy Court. |
| The Estate has opted out of the centralized audit regime pursuant to 26 U.S.C. § 6221(b) and 26 C.F.R. § 301.6221(b)-1(a) in all requisite tax filings. | Trustee's first-hand knowledge as signer of those returns | |
| I understand that the Schedule K-1 allocation matters involve members of LeClairRyan, PLLC, that individual members may have conflicting positions with respect to such allocations, that the three year period for amending the Estate's 2019 tax returns has passed, and that there has been no definitive resolution of the Schedule K-1 allocation matters by the requisite taxing authorities. As such and based on current circumstances known to me, I intend to neither amend prior tax returns to change the Schedule K-1 allocations set forth in prior returns nor file future returns on a basis other than the Schedule K-1 allocations set forth in such prior returns. | Trustee's understanding after discussions with accountants | |

For these reason, the Trustee is weighing the interests of the Estate in taking other action, including but not limited to an appeal and/or motion to reconsider. The Trustee had not felt well for a few days but continued to address matters in this Case given that the Trustee takes her responsibilities extremely seriously and respects the bankruptcy process to which she has devoted over 30 years of her legal career. Having extreme difficulty breathing, along with other

problematic symptoms, the Trustee sought medical treatment during the afternoon of August 22, 2023. At approximately 5:00 p.m. on August 22, 2023, the Trustee was diagnosed as having COVID with a superimposed bacterial infection. The Trustee was prescribed antibiotics and ordered immediate bed rest. She was also advised to quarantine until August 25, 2023. The Trustee is hopeful that her health will improve such that she can meet with counsel in person over the weekend and discuss all. This would allow her, in the exercise of her business judgement, to make an informed decision as to what is in the best interest of the Estate. The Trustee will inform this Court of the same on or before August 28, 2023.

## NOTIFICATION OF FOURTH CIRCUIT

As required by the Fourth Circuit Court of Appeals, the parties have kept that Court apprised of the status of this matter. Most recently, the parties filed a joint status report with the Fourth Circuit Court of Appeals on August 15, 2023, before this Court issued its Memorandum Order and Memorandum Opinion. At the time of filing that report, the parties intended to go forward with a modified settlement of other matters that, while technically unrelated to the appeal, were addressed and resolved as part of the confidential mediation discussions under Local Rule 33 conducted with the assistance of the Office of the Circuit Mediator, primarily Appellant's proof of claim pending in the Bankruptcy Court and Appellant's entitled to no other distribution from the Estate other than his pro rata share under 11 U.S.C. § 726(a)(2) of an allowed claim. But, thereafter, the Trustee received this Court's Memorandum Order and Memorandum Opinion. To the extent the Trustee ultimately appeals and/or moves this Court to reconsider, the Trustee will so inform the Fourth Circuit through a pleading filed on the docket at the Fourth Circuit. To the extent that the Trustee determines, in the exercise of her business judgement that it is in the best interest

of the Estate to forgo both an appeal and a motion to reconsider, and to instead move forward with this Court's revised settlement, the Trustee will report the same to the Fourth Circuit and expects that a briefing schedule from the Fourth Circuit likely will follow.

### IMPLICATIONS OF WITHDRAWN REFERENCE ON REMAND ITEM

This Court also asked the parties to address the implications of withdrawing the reference on the pending remand to the Bankruptcy Court to correct the date of the ESH List to be September 3, 2019. While this Court has withdrawn the reference regarding any claims of Gary LeClair in the proposed settlement, and any other claims captured in the settlement agreement at issue, the Trustee submits that this Court's remand directive relates to matters of bankruptcy case administration as opposed to Mr. LeClair's claims. As such, once the Fourth Circuit has ruled on the underlying appeal and does so in a manner that affirms this Court's rulings, the Bankruptcy Court should revise its earlier order as instructed by this Court with respect to the ESH List. In addition, to the extent the Bankruptcy Court believed this Court's directive also required some type of modification to the actual ESH List on the Court's docket, the Bankruptcy Court could make a docket modification to the entry on 09/17/2019 at ECF No. 79 that currently reads: "List of Equity Security Holders filed by Henry Pollard Long III of Hunton Andrews Kurth LLP on behalf of LeClairRyan PLLC. (Long, Henry)." Said modification could be in the form of a statement such as By operation of law, the date of the ESH List is September 3, 2019."

### CONCLUSION

Both the undersigned and the Trustee affirmatively declare that they never would purposefully conduct themselves in a disrespectful manner to this Court and remain extremely disheartened to hear that their actions have been construed as such. To be clear, they hold the

federal judiciary in the highest regard. I Paula Beran and Lynn Tavenner, the Trustee, apologize if our actions, which we continue to believe are grounded in sound law and principle, had the unintended effect of offending any member of the judiciary in the Richmond Division of the Eastern District of Virginia or beyond. To be sure, both Beran and Tavenner are working as diligently as possible in their respective roles to ensure that all fiduciary actions are in the best interests of the Estate and sanctioned by relevant rule of law. To that end, it is with the utmost respect for the judiciary and the judicial process that we respond to the three specific items as directed in the Memorandum Opinion.

1. Relating to the first directive to advise the Court as to the parties intent on moving forward with the proposed settlement absent the stricken provisions, the Trustee believes it could be beneficial to the interest of the bankruptcy estate to resolve the pending proof of claim filed by Mr. LeClair by way of seeking this Court's approval of the settlement agreement as modified by this Court. But always striving to be forthright and candid with the Court and parties in interest, the Trustee also is weighing the interests of the estate in taking action, including but not limited to an appeal and/or motion to reconsider, as it relates to this Court's August Memorandum and August Memorandum Opinion. As such, the Trustee is hopeful that she will be able to provide a definite answer to this Honorable Court on or before August 28, 2023 notwithstanding the same results in a substantially shorter period to decide whether to file a notice of appeal and/or motion to reconsider than is provided for in the requisite rules of procedure.
2. With respect to the Court's concerns regarding the implications of the parties actions on the pending Fourth Circuit Appeal, the parties, as recently as August

15, 2023, have and will continue to keep the Fourth Circuit apprised of the status of all matters in the Bankruptcy Case that implicate the appeal. The Trustee anticipates, depending on her final decision regarding your Honor's August Memorandum Order and August Memorandum Opinion, that the Fourth Circuit will either continue the Appeal in abeyance or will enter a scheduling order for briefing.

3. This Court also asked the parties to address the implications of withdrawing the reference on the pending remand to the Bankruptcy Court to amend its earlier order regarding the ESH List. While this Court has withdrawn the reference regarding any claims of Gary LeClair in the proposed settlement, and any other claims captured in the settlement agreement at issue, the Trustee submits that this Court's remand directive relates to matters of bankruptcy case administration as opposed to Mr. LeClair's claims and as such, once the Fourth Circuit has ruled on the underlying appeal, the Bankruptcy Court should revise its earlier order as instructed by this Court with respect to the ESH List.

The Trustee and the undersigned counsel will be present at the August 29, 2023 hearing and are happy to address any matter the Court may have.

Dated: August 24, 2023  Respectfully submitted,
Richmond, Virginia

                                    **LYNN L. TAVENNER, CHAPTER 7 TRUSTEE**

                                    By: */s/ Paula S. Beran*
                                    Paula S. Beran, Esquire (VSB No. 34679)
                                    Tavenner & Beran, PLC
                                    20 North 8th Street
                                    Richmond, Virginia 23219
                                    Telephone: (804) 783-8300
                                    pberan@tb-lawfirm.com

                                    *Counsel for Lynn L. Tavenner, Chapter 7 Trustee*